# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2013

No. 12-60551
Summary Calendar

Lyle W. Cayce
Clerk

MARTIA MOFFETT,

Plaintiff–Appellant,

v.

MISSISSIPPI DEPARTMENT OF MENTAL HEALTH,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:11-CV-262

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Martia Moffett appeals the district court's grant of summary judgment in favor of the Mississippi Department of Mental Health (the Department), her former employer, on her Title VII retaliation and state-law whistleblower claims. We agree with the district court that Moffett failed to introduce sufficient evidence to survive summary judgment and therefore affirm as to both claims.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60551

**I.**

Moffett began working for the Department in 1990 as a social worker. In 1998, she was promoted to quality assurance director at Ellisville State School. Sometime later, Moffett complained that as an African-American employee, she was paid less than similarly situated Caucasian employees. In 2007, after the Mississippi State Personnel Board rejected her discrimination claim, Moffett filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC ultimately concluded that the Department had not violated applicable antidiscrimination laws. Moffett later filed a Title VII lawsuit against the Department based on the racial discrimination charge; that lawsuit was dismissed.

Following the 2007 charge of discrimination, Moffett alleges that the Department retaliated against her by removing her from a number of committees and by demoting her in February 2009 to a position that paid the same salary but had a lower status within the Department's organizational structure.

After moving to the new position, Moffett began investigating alleged billing fraud by the Department. She was placed on administrative leave in August 2009. During her administrative leave, Moffett reported her billing-fraud suspicions to the Mississippi attorney general's office. Moffett also received a number of reprimands while on leave for incidents that occurred prior to the leave and received a pretermination notice, which stated that the Department was considering terminating her employment and outlined its reasons for doing so. Due to the reprimands, Moffett received another demotion when she returned from administrative leave, this time with a pay cut of approximately $20,000 per year. After the demotion, Moffett filed a second charge of discrimination with the EEOC, alleging that she was demoted in retaliation for her 2007 charge of discrimination and subsequent lawsuit.

No. 12-60551

In early December, Moffett was scheduled to meet with her former supervisor, Cindy Cooley, to complete a performance appraisal for Moffett's former position. Moffett brought Althea Fisher, her supervisor at the time, to act as a witness to the meeting, but Cooley refused to allow Fisher to attend the meeting. Rinsey McSwain, assistant director of Ellisville State School and one of Moffett's supervisors, offered to sit in on the meeting instead, but Moffett refused to attend the meeting without Fisher present. According to the Department and to a number of witnesses, McSwain gave Moffett a directive to attend the meeting. Moffett disputes that McSwain directly ordered her to attend the meeting. Nevertheless, on December 7, Moffett received a reprimand issued by Fisher, her supervisor at the time, for failing to follow the directive from McSwain. She also received a second pretermination notice, again outlining the Department's reasons for considering termination. Finally, on December 22, the Department terminated Moffett's employment.

The termination notice indicated that Moffett's employment was terminated because her conduct "constitute[d] a breach of agency policy." It discussed in detail the December 7 reprimand for failing to follow McSwain's directive. It also referenced a number of other written reprimands that Moffett received while employed at the Department, including an October 21, 2009 reprimand for failing to perform assigned work; three October 6, 2009 reprimands for (1) initiating baseless disciplinary actions against her subordinates, (2) treating her coworkers in an unprofessional manner, and (3) insubordination; an August 14, 2009 reprimand for insubordination; a November 27, 2006 reprimand for failing to comply with established written policy; and a June 22, 1995 reprimand for insubordination.

Following an unsuccessful appeal of her termination to the Mississippi Employment Security Commission (MESC), Moffett filed suit against the Department, alleging that the Department terminated her (1) in retaliation for

3

No. 12-60551

her participation in activities protected under Title VII and (2) in violation of the Mississippi whistleblower statute because she reported the Department's allegedly fraudulent billing practices to the Mississippi attorney general. The district court granted summary judgment in favor of the Department on both claims, holding (1) that Moffett had not introduced sufficient evidence that the Department's proffered nonretaliatory reason for terminating her was pretextual and (2) that she had not offered evidence that anyone at the Department knew of her report to the attorney general and thus could not assert a claim under the Mississippi whistleblower statute. This appeal followed.

## II.

"We review *de novo* a district court's ruling on a motion for summary judgment, applying the same legal standard as the district court in the first instance."[1] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] If the movant meets its initial burden by showing that there is no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[3] "Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."[4]

## III.

Moffett first contends that the district court erred in granting summary judgment in favor of the Department as to her Title VII retaliation claim. Title

---

[1] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

[2] FED. R. CIV. P. 56(a).

[3] *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000) (quoting *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 161 (5th Cir. 1996)) (internal quotation marks omitted).

[4] *Evans v. City of Hous.*, 246 F.3d 344, 348 (5th Cir. 2001).

4

No. 12-60551

VII prohibits employment discrimination against "any individual" because of the individual's "race, color, religion, sex, or national origin."[5]   Title VII also prohibits retaliation against employees who seek its protection, forbidding employer actions that discriminate against an employee because she "has opposed any practice made an unlawful employment practice" by Title VII or because she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[6]

"[T]he allocation of the burden of proof in Title VII retaliation cases depends on the nature of the plaintiff's evidence."[7]  If the plaintiff relies on circumstantial evidence to prove causation, as Moffett does here, we use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*,[8] under which the plaintiff carries the initial burden of establishing a prima facie case of retaliation.[9]  To meet this burden, the plaintiff must show that (1) she participated in an activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action.[10]  If the plaintiff succeeds in making this prima facie showing, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action."[11]  The employer's burden is simply a burden

---

[5] 42 U.S.C. § 2000e-2(a).

[6] *Id.* § 2000e-3(a).

[7] *Smith v. Xerox Corp.*, 602 F.3d 320, 327 (5th Cir. 2010) (citing *Fierros v. Tex. Dep't of Health*, 247 F.3d 187, 191 (5th Cir. 2001)).

[8] 411 U.S. 792 (1973).

[9] *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

[10] *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)).

[11] *Id.* at 557 (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).

of production, and it does not involve a credibility assessment.[12] "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason . . . is a pretext for the real . . . retaliatory purpose. To carry this burden, the plaintiff must rebut each . . . nonretaliatory reason articulated by the employer."[13]

In the district court, the Department did not dispute that Moffett participated in Title VII activities or that it took adverse employment actions against her; rather, it disputed that she had established causation. The district court assumed that Moffett had established causation but held that even under that assumption, Moffett failed to offer sufficient evidence that the Department's legitimate nonretaliatory reasons for her demotion and discharge were pretextual.

Like the district court, we need not reach the causation issue because even assuming that Moffett has shown a causal link sufficient to establish a prima facie case of retaliation, she has not offered sufficient evidence of pretext to survive summary judgment. We thus assume, without deciding, that Moffett has made a prima facie case of retaliation. The Department, in turn, has met its burden of production by offering a legitimate, nonretaliatory reason for Moffett's termination, specifically that Moffett received numerous reprimands for various workplace offenses, culminating in her "staunch refusal to comply with a directive" from McSwain, her supervisor.

Moffett, therefore, "must offer some evidence from which the jury may infer that retaliation was the real motive."[14] Moffett argues that her own deposition testimony, in which she denies that McSwain ever gave her a

---

[12] *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

[13] *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

[14] *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

directive to attend the meeting in question, establishes a genuine dispute as to an issue of material fact. However, Moffett's own evidence on this point is inconsistent at best. In a transcript of the hearing before the MESC, submitted by Moffett in support of her opposition to summary judgment, Moffett admits in sworn testimony that McSwain asked her to come into her office and meet with her. Additionally, in an earlier affidavit and in her briefing to the district court, Moffett initially argued that McSwain was not her supervisor at the time of the meeting, so there was "no possibility" that she failed to follow a supervisor's directive. It was only after the Department pointed out that McSwain was "at the top of the chain of command for all employees," including Moffett, that Moffett attempted to correct this error by submitting a second affidavit. Moffett's last-minute effort to create a dispute of material fact is not enough to prevent summary judgment.[15]

Further, even if Moffett had established a genuine dispute as to whether McSwain in fact ordered her to attend the meeting, the issue is not whether the Department's assessment of the events leading up to her termination was accurate. Rather, "the issue is whether [the Department's] *perception* of [Moffett's] performance, accurate or not, was the real reason for her termination."[16] As the district court correctly noted, Moffett's then-supervisor Fisher issued the December 7 reprimand, and Moffett offered "no evidence that would tend to show that Fisher did not, in fact, believe" that McSwain gave

---

[15] *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346-47 (5th Cir. 2007) (holding that a Title VII plaintiff who submitted an affidavit that was inconsistent with her deposition testimony did not offer sufficient evidence to rebut the defendant's proffered nondiscriminatory explanation for the plaintiff's dismissal); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) ("Although the court must resolve all factual inferences in favor of the nonmovant, the nonmovant cannot manufacture a disputed material fact where none exists. Thus, the nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." (citation omitted)).

[16] *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir. 1999).

Moffett a directive and that Moffett, in turn, refused to follow that directive. In the MESC transcript offered by Moffett, Fisher testified under oath that she witnessed McSwain directing Moffett to meet with her and Moffett refusing to do so. Moffett has offered no evidence that Fisher issued the December 7 reprimand in bad faith, nor has she offered evidence that the Department officials who relied on the reprimand did so as a pretext.

Additionally, Moffett's termination notice cites six other reprimands that Moffett received during her employment. Although Moffett is required to "rebut each nondiscriminatory or nonretaliatory reason articulated by the employer" in order to survive summary judgment,[17] Moffett does not argue that the Department's reliance on these reprimands was pretextual. Instead, she contends that "[w]hile the prior reprimands were referenced in the notice of pre-termination, they were not the reason given for termination." That statement is simply not supported by the record. The district court thus did not err in granting summary judgment in favor of the Department as to Moffett's Title VII retaliation claim.

## IV.

Second, Moffett argues that the district court erred in granting summary judgment in favor of the Department as to her whistleblower claim. Under Mississippi law, state agencies may not "dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body."[18] The statute defines a whistleblower as "an employee who in good faith reports an alleged improper governmental action to a state investigative body[,] . . . an employee who in good faith provides information to a state investigative body,

---

[17] *McCoy*, 492 F.3d at 557.

[18] MISS. CODE ANN. § 25-9-173(1) (2012).

or an employee who is believed to have reported alleged improper governmental action to a state investigative body or to have provided information to a state investigative body but who, in fact, has not reported such action or provided such information."[19]  So long as a qualifying employee proves that the adverse action she suffered was the "direct result" of her report,[20] she may be reinstated, recover back pay, or, in some cases, receive damages.[21]

The district court held that Moffett did not offer sufficient evidence that anyone at the Department was aware of her report to the attorney general and thus that she could not prove that her termination was the direct result of her report, as required by the statute.  Moffett argues that the Department's knowledge of her report to the attorney general can be inferred through circumstantial evidence.

In support of this contention, Moffett cites her own affidavit, in which she states that she told McSwain that she would report the alleged fraud to the attorney general if the Department did not address it.  In her earlier sworn deposition testimony, however, Moffett was questioned about her conversation with McSwain and did not mention her threat to make a report to the attorney general's office:

Q: And what did you report to Ms. McSwain and Mr. Hendrix?

A: That according to the information and what I had perceived, it appeared there had been some falsifying documentation. . . .

. . . .

Q: Did you tell them anything else?

A: That was it.

---

[19] *Id.* § 25-9-171(j).

[20] *Id.* § 25-9-173(3).

[21] *Id.* § 25-9-175.

No. 12-60551

During the deposition, Moffett also admitted that she had not informed anyone at the Department that she actually made the report.

In the district court, the Department argued that the affidavit should be stricken because it was inconsistent with Moffett's deposition testimony. Moffett argued that the deposition testimony referenced a different conversation with McSwain than the affidavit and thus that the two statements were not inconsistent. The district court did not reach the issue of whether to strike the affidavit because it held that the affidavit at best established that the Department knew that Moffett *threatened* to make a report, not that the Department knew that she followed through with her threat. This, the district court reasoned, was insufficient because the statute requires that the employer had actual knowledge of a report. We do not reach the question of whether actual knowledge is required under the statute because we hold that the contradictory affidavit should not be considered.

"It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."[22] On appeal, Moffett has not offered any explanation for the inconsistency between her affidavit and her deposition testimony, and, even if she had, her explanation before the district court was inadequate.[23] Moffett "cannot manufacture a disputed material fact where none exists,"[24] and the district court correctly granted summary judgment in favor of the Department as to her whistleblower claim.

---

[22] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n.23 (5th Cir. 1992)).

[23] *See id.* at 495-96; *Thurman*, 952 F.2d at 136 n.23.

[24] *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984).

No. 12-60551

\*      \*      \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.