# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10568

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2015

Lyle W. Cayce
Clerk

RICHARD HIGBIE,

Plaintiff–Appellant,

v.

JOHN KERRY, in his official capacity as Secretary of State,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-2636

Before SMITH, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

Richard Higbie, a U.S. Department of State employee, sued for retaliation under the Americans with Disabilities Act of 1990 (ADA),[1] Title VII of the Civil Rights Act of 1964 (Title VII),[2] and the Rehabilitation Act of 1973.[3]

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 42 U.S.C. §§ 12101-213.

[2] 42 U.S.C. §§ 2000e to 2000e-17.

[3] 29 U.S.C. §§ 701-95o.

No. 14-10568

The district court granted the Government's motion for summary judgment. We affirm.

## I

Higbie was employed by the Department of State's Bureau of Diplomatic Security. He worked in the Dallas Resident Office, which operates under the direction of the Houston Field Office. The Special Agent in Charge (SAC) and the Assistant Special Agent in Charge (ASAC) head the Houston office. The Resident Agent in Charge (RAC) heads the Dallas office.

In 2001, Higbie filed an Equal Employment Opportunity (EEO) complaint based on his efforts to take leave relating to his daughter's illness. The parties settled the complaint in July 2005. The settlement converted Higbie's foreign service position to a "Civil Service appointment as a criminal investigator, GS-1811-13, Step 2." A job description titles the GS-1811-13 position as a "Senior Criminal Investigator." Higbie argues that because of his complaint and his attempts to enforce the settlement's provisions, he suffered three retaliatory adverse employment actions.

The first alleged adverse action occurred in late 2008. At that time, Marian Cotter served as SAC and Paul Vallee served as ASAC in the Houston office, and Laviris Stubblefield served as RAC in the Dallas office. Higbie's job description stated that he was to serve in relief of the RAC as the Acting RAC "as directed or in the absence of the assigned [RAC]." Vallee instructed Stubblefield to implement a system in which Higbie, who held a non-promotable civil service position, rotated the Acting RAC duty with promotable foreign service agents. Vallee and Cotter explained that rotating the Acting RAC duty would provide foreign service agents with leadership opportunities that could enhance their credentials for a future potential promotion.

The second alleged adverse action occurred in January 2011. By this time, Cliff Taliaferro had replaced Stubblefield as RAC. On January 26, 2011,

Taliaferro e-mailed Higbie with questions about Higbie's job description. In particular, Taliaferro had concerns about language in the job description describing Higbie as a "senior" criminal investigator and as the "next senior agent in the office." Taliaferro further wrote: "So if the senior part of the title is important to you we can leave it as is for now and reach out to HR for guidance and let them make the call. But the wording about being the next senior person in the office needs to be removed or changed." Taliaferro later explained that he ultimately "allowed Higbie to keep the 'senior' designations he preferred, and this was reflected in the final version of the 2011 work statement and also in subsequent work statements for later years." Higbie has not produced a work statement that incorporates the changes that Taliaferro suggested in his January 2011 e-mail.

The third alleged adverse action occurred in March 2011. Although the building's seventh floor housed the Dallas Resident Office, Higbie worked on the building's eleventh floor, which housed the Bureau of Consular Affairs' Passport Agency. A 2011 job description designated Higbie as the Bureau of Diplomatic Security's liaison to the Dallas Passport Agency. In late March, Taliaferro relocated Higbie to the seventh floor. Taliaferro stated in an e-mail to Higbie that the reason for the move was to improve their working relationship and denied that Higbie's liaison duties were being removed. However, Jason Banks, an agent in the Dallas Resident Office, stated that after the move, Higbie was prohibited from speaking to Consular Affairs employees.

Higbie filed suit alleging violations of the ADA, Title VII, and the Rehabilitation Act. The district court granted the Government's motion for summary judgment. It concluded that (1) the alleged adverse employment actions were not materially adverse or that their existence was not established by admissible evidence; (2) Higbie failed to demonstrate a causal link between

No. 14-10568

protected activity and the alleged adverse actions needed to establish a prima facie case; (3) the Government articulated legitimate, nonretaliatory reasons for the alleged adverse actions; and (4) Higbie failed to show that the Government's proffered reasons were pretextual. Higbie appeals.

## II

We review the district court's grant of summary judgment de novo.[4] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6] We consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.[7]

## III

As an initial matter, the Government contends that Higbie's sole cause of action lies under the Rehabilitation Act. Title VII makes unlawful discrimination based on "race, color, religion, sex, or national origin."[8] Higbie has not asserted any alleged discrimination based on one of Title VII's protected classes,[9] so Higbie's suit cannot proceed under Title VII. Further,

---

[4] *Avakian v. Citibank, N.A.*, 773 F.3d 647, 650 (5th Cir. 2014).

[5] FED. R. CIV. P. 56(a).

[6] *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009)).

[7] *Id.* (quoting *Paz*, 555 F.3d at 391).

[8] 42 U.S.C. § 2000e-2(a)(1).

[9] *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

4

No. 14-10568

the ADA excludes the United States from its definition of an employer,[10] so the ADA is also unavailable to Higbie, a federal employee.[11]  Therefore, Higbie's claim is cognizable only under the Rehabilitation Act.

## IV

A retaliation claim under the Rehabilitation Act based on circumstantial evidence is analyzed under the *McDonnell Douglas*[12] burden-shifting framework.[13]    First, a plaintiff must establish a prima facie case of retaliation.[14]  To make out a prima facie case, a plaintiff must establish that "(1) he participated in an activity protected by [the Rehabilitation Act]; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[15]    Second, if the plaintiff meets his burden, the employer must "articulate a legitimate, . . . nonretaliatory reason for its employment action."[16] Finally, "[i]f the employer meets its burden[,] . . . the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose."[17]

Higbie's claim fails because he cannot establish a prima facie case.  He has failed to create a fact dispute as to whether he suffered an adverse employment action.  An adverse employment action is one that "a reasonable

---

[10] 42 U.S.C. § 12111(5)(B)(i).

[11] *See Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003).

[12] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[13] *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (per curiam).

[14] *McCoy*, 492 F.3d at 556-57.

[15] *Id.* (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) and *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002))

[16] *Id.* at 557 (citing *Gee*, 289 F.3d at 345).

[17] *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[18]  This standard is expressed in "general terms because the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."[19]

## A

The first alleged adverse action occurred when Higbie's Acting RAC duties were modified.  Higbie asserts that he was completely barred from serving as Acting RAC.  However, he only points to evidence showing that the Acting RAC position switched to a rotation system.

The district court observed that Higbie's job description stated that he "was to act as the [RAC] as directed *or* in the absence of the assigned [RAC]." Based on this language, the district court concluded that no evidence supported Higbie's assertion that he was automatically the Acting RAC when the actual RAC was absent.  But viewing this language in the light most favorable to Higbie, Higbie was to serve as Acting RAC in two distinct scenarios—(1) each time the RAC was absent and (2) at any other time he was directed to do so. Therefore, at the summary judgment stage, we must assume that Higbie was the sole Acting RAC before the rotation system was expressly implemented.

The Supreme Court has explained that the "reassignment of job duties is not automatically actionable."[20]  "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and

---

[18] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted).

[19] *Id.* at 69.

[20] *Id.* at 71.

should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."[21]

Higbie argues that the Second Circuit's decision in *Kessler v. Westchester County Department of Social Services*[22] establishes that the move to the rotation system was materially adverse. In *Kessler*, the plaintiff suffered a materially adverse action when he kept his job title but was no longer "allowed to perform the broad discretionary and managerial functions of [his] position, no one would report to him, and he would be forced to do work normally performed by clerical and lower-level personnel."[23] The District of Columbia Circuit has similarly held that a "complete loss of supervisory responsibilities" that were a regular part of the plaintiff's job could constitute a materially adverse action.[24]

Higbie also points to our recent decision in *Thompson v. City of Waco, Texas*, a Title VII discrimination case.[25] Thompson, a police detective, was prohibited from "working undercover, searching for and logging evidence, serving as an evidence officer, acting as an affiant, and being a lead investigator."[26] Reviewing a Rule 12(b)(6) motion to dismiss, we accepted

---

[21] *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)) (internal quotation marks omitted).

[22] 461 F.3d 199, 209-10 (2d Cir. 2006).

[23] *Id.*

[24] *See Geleta v. Gray*, 645 F.3d 408, 412 (D.C. Cir. 2011) (holding that a fact issue existed as to material adversity when, among other things, the plaintiff went from supervising twenty employees to supervising none); *see also Stewart v. Ashcroft*, 352 F.3d 422, 426-27 (D.C. Cir. 2003) (holding that a failure to promote attorney to a position in which he "actively and directly supervises the Senior Litigation Counsel" was materially adverse); *Burke v. Gould*, 286 F.3d 513, 515, 521-22 (D.C. Cir. 2002) (holding that removal of supervisory duties from a "supervisory computer systems analyst" raised a fact dispute sufficient to overcome a motion for summary judgment).

[25] 764 F.3d 500, 502 (5th Cir. 2014).

[26] *Id.* at 502, 506.

No. 14-10568

Thompson's allegations that these responsibilities were "integral and material responsibilities of a detective."[27] We distinguished Thompson's case from *Mota v. University of Texas Houston Heath Science Center*.[28] In *Mota*, "the university limited Mota's ability to serve as principal investigator only 'on certain projects,' and there was no indication that being a principal investigator on those projects was a significant part of his job as a visiting professor."[29] We placed particular importance on Thompson's assertion that, unlike in *Mota*, "he lost his ability to perform his essential job functions in all investigations, not just on certain projects."[30] Accordingly, we concluded that Thompson alleged sufficient facts to establish an adverse employment action.[31]

In contrast to the plaintiffs in *Kessler* and *Thompson*, Higbie only had an intermittent supervisory role as an Acting RAC, which was reduced, not eliminated, and none of his regular duties as a senior criminal investigator changed as a result of the rotation system. Also, Higbie has put forth no evidence that he gained any significant prestige or any benefits from serving as Acting RAC.[32] Therefore, no fact dispute exists as to whether implementing a rotation system for the Acting RAC position was materially adverse.

**B**

Higbie next contends that Taliaferro stripped him of his "senior criminal investigator" and "next senior agent" titles. In a declaration, Taliaferro stated that although he questioned Higbie's titles in an e-mail, he never actually stripped them:

---

[27] *Id.* at 506 (internal quotation marks omitted).

[28] *Id.*; *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512 (5th Cir. 2001).

[29] *Thompson*, 764 F.3d at 506 (quoting *Mota*, 261 F.3d at 521).

[30] *Id.*

[31] *See id.*

[32] *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 71 (2006).

8

[U]pon hearing Higbie's understanding of these matters, I did not direct that Higbie's references to being a "senior" criminal investigator or agent be removed from his work statement. . . . Instead, I placed a note in a preliminary version of Higbie's 2011 work statement about seeking guidance from Human Resources about Higbie's exact title and designation. After conferring with officials in the Houston Field Office, I allowed Higbie to keep the "senior" designations he preferred, and this was reflected in the final version of the 2011 work statement and also in subsequent work statements for later years.

Higbie only relies on Taliaferro's initial e-mail that stated that the "next senior" title needed to be changed. Higbie fails to point to evidence, such as a work statement produced after the initial e-mail, showing that his title was actually changed. Therefore, no fact issue exists as to whether Higbie's title was stripped.

## C

Finally, Higbie argues that he suffered a materially adverse action when Taliaferro stripped him of his duty as primary liaison to the Bureau of Consular Affairs' Passport Agency by moving Higbie's desk from the eleventh floor, which housed Consular Affairs, to the seventh, which housed the Dallas Resident Office.

Higbie contends that the deposition testimony of Jason Banks, a fellow employee in the Dallas Resident Office, establishes that a materially adverse action occurred. Banks stated that Taliaferro instructed Higbie "not to talk with any of the [consular] affairs people anymore." But Banks also testified that he personally observed only the relocation itself; the rest of the information Banks knew about the tensions between Higbie and Taliaferro was "secondhand." Accordingly, the district court excluded, as hearsay, Banks's statement that Higbie could no longer speak to Consular Affairs employees.

In his brief, Higbie fails to acknowledge that the district court excluded Banks's statement as hearsay. The failure to challenge a district court's ruling

excluding evidence precludes this court from relying on the excluded evidence on appeal.[33]   Higbie waived this issue by failing to raise it in his brief.[34] Furthermore, counsel's efforts to address the hearsay issue at oral argument were unpersuasive.  He argued that the district court only determined that part of Banks's testimony was hearsay and that the relevant portions were not ruled inadmissible.   However, the district court's opinion clearly excludes Banks's statement that Higbie was prohibited from speaking to Consular Affairs employees.  Accordingly, we cannot consider Banks's testimony.

Higbie next argues that the move itself is sufficient to create a fact issue as to whether his liaison duties were stripped.  In his deposition, Taliaferro explained that his decision to relocate Higbie did not impact Higbie's liaison duties.  Furthermore, Stubblefield explained in his deposition that the fact that an agent's office was located in space also occupied by Consular Affairs did not afford that agent any "extra duties."  Higbie has failed to introduce evidence of what his duties as liaison actually entailed and how the move impacted these duties.   The title of "liaison" does not suggest that an employee's duties inherently relate to his physical location.[35]  Accordingly, the mere fact that Higbie was moved to a different floor does not create a fact issue as to whether his liaison duties were stripped.

\*     \*     \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[33] *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 582 (5th Cir. 2004).

[34] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

[35] *See* BRYAN A. GARNER, GARNER'S MODERN AMERICAN USAGE 510 (3d ed. 2009) (defining "liaison" as "acting as an intermediary").