ACCEPTED
13-15-00313-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/23/2015 5:08:07 PM
Dorian E. Ramirez
CLERK

NO. 13-15-00313-CV

_____

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/28/2015 8:00:00 AM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS
THIRTEENTH  JUDICIAL  DISTRICT
CORPUS CHRISTI, TEXAS

_____

NEAL VANZANTE

Plaintiff-Appellant

V.

TEXAS A & M UNIVERSITY--KINGSVILLE

Defendant-Appellee

_____

On Appeal From the 105th District Court
Kleberg  County
Trial Court Cause No. 12-238-D

_____

APPELLANT NEAL VANZANTE'S REPLY BRIEF

_____

REQUEST FOR ORAL ARGUMENT

Respectfully submitted,

 _/s/ Chris McJunkin_____
Chris McJunkin
State Bar No. 13686525
2842 Lawnview
Corpus Christi, Tx. 78404
Tel: (361) 882-5747
Fax: (361) 882-8926
cmcjunkin@stx.rr.com

1

## IDENTITIES OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.1(a), Appellant submits the following list of names and last known addresses of all parties and their counsel at trial and on appeal:

Parties to the Trial Court Judgment:

Appellant/Plaintiff:               Neal Vanzante

Appellee/Defendant            Texas A&M University- Kingsville

Counsel:

For Appellant:               Chris McJunkin, Appellate Counsel
2842 Lawnview
Corpus Christi, Tx. 78404
Fax: 361-882-8926
cmcjunkin@stx.rr.com

For Appellee:              Anne Mackin, Assistant Attorney General
Office of Attorney General - Litigation
P.O.Box 12548, Capitol Station
Austin, Tx. 78711-2548
Fax: (512) 320-0667
Anne.Mackin@texasattoneygeneral.gov

## TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL …………………….........    2

TABLE OF CONTENTS ……………………………………………......    3

INDEX OF AUTHORITIES …………………………………………....    5

STATEMENT OF FACTS ……………………………………………..    7

Appellant was Qualified for Hire and was Not Prohibited From
Applying by the  2006 Release and Settlement Agreement with
TAMU Corpus Christi .....................................................................    8

2006 Release and Settlement Agreement with
TAMU Corpus Christi
Was Not a Basis Used by Defendant in Not Hiring Appellant:  ....................    8

 Appellant was not prohibited  from applying for the Chair opening by the
 2006 Release and Settlement Agreement with TAMU Corpus Christi .........    10

Appellant's resignation.................................................................    13

Appellant's Applications ...............................................................    15

Qualification
     Leadership, Administration,  etc.  .......................................    15

Appellant Met ALL Appellee's Qualifications for Full Professor..................    16

Appellant Met Appellee's Alleged General Qualification
     Leadership, Administration,  etc.  ..... ................................    18

Dr.Sullivan did not Meet Appellee's Alleged General Qualification
     Leadership, Administration,  etc.  ..... ................................    20

General Qualification:  Appellee's supporting evidence not
    part of the decision-making process......................................    21

Appellee's Alleged General Qualification
     Professional, Facilitator, etc. c.  .......................................    22

3

Dr.Sullivan did not Meet Appellee's Alleged General Qualification
Professional, Facilitator, etc etc. ...........................................  22

General Qualification:  Appellee's supporting evidence not
part of the decision-making process...................................  22

Appellant Met Appellee's Alleged General Qualification
Professional, Facilitator, etc . ................................... .....  20,  23

Appellant was AACSB AQ......................................................  25
AACSB does not require current teaching to maintain AACSB AQ status..  25
Appellant Met and Maintained AACSB AQ during 18 months...................  28
Appellant Met AACSB currency requirement................... ......................  28
Appellant Met Position's Preferred Qualifications..................... ................  30
Krueger draft document.........................................................  31
2006 Release and Settlement was not basis for decision...........................  34
Dr.Sullivan was not qualified

Appellee determined Sullivan not Qualified.........................................36

Sullivan was not qualified for Full Professor....................................  36
Dean Thomas Dock was decision-maker...................................................  38
January 7, 2013, Start date..........................................................  42
Appellee conducted investigation into Dean Dock's hiring, etc.....................  43

PRAYER ……………………………………………………………………………  44

CERTIFICATE OF SERVICE …………………………………………………… .  45

CERTIFICATE OF COMPLIANCE ...............................................  46

# INDEX OF AUTHORITIES

*Gee v Principi*, 289 F.3d 342, 346, (5th Cir. 2002)

*Staub v Proctor Hosp*., 131 SW.Ct. 1186, 1193 (2011)

**STATUTES:**

Tex.Lab.Code Sec. 125(a).

Texas Rules of Appellate Procedure  38.6(c)  ……………………………….

Texas Rules of Appellate Procedure  TRAP 9.4(i)(2)(C), …………………….

NO. 13-15-00313-CV
_____

IN THE COURT OF APPEALS
THIRTEENTH  JUDICIAL  DISTRICT
CORPUS CHRISTI, TEXAS
_____


NEAL VANZANTE
Plaintiff-Appellant

V.

TEXAS A & M UNIVERSITY--KINGSVILLE

Defendant-Appellee

_____


On Appeal From the 105th District Court
Kleberg  County
Trial Court Cause No. 12-238-D
_____

FIRST AMENDED BRIEF OF APPELLANT NEAL VANZANTE
_____


**TO THE HONORABLE THIRTEENTH  COURT OF APPEALS:**

COMES NOW, Appellant, Neal Vanzante, and respectfully submits this, Appellant's

Reply, pursuant to Rule 38.6(c)  of the Texas Rules of Appellate Procedure, and would

show the Court the following:

6

============================

Appellee's Fact Presentation

Appellee Brief p.4: Defendant cites Dr.Richard Aukerman deposition testimony to allege that Dr. Sullivan was the only candidate invited by the search committee. citing p.26, lines 15-20.

Aukerman's testimony cited by Appellee evidences that Dean Dock should have re-advertised the Chair opening after it was determined Dr.Sullivan was not qualified:

> Hypothetically, because obviously I wasn't in a position to do that, I, I probably would have simply - I probably would have at that point, since that was the only candidate that the search committee said anything about inviting at all, **I probably would have recommended that we readvertise the position**. Probably. I mean I

Dr.Aukerman investigation had determined that the search committee did not invite Dr.Sullivan to campus. August 15, 2012: Dr.Aukerman notified Martin Brittain of a list of Dean Dock's misconduct including that "*she (Dr.Sullivan) was not recommended for an interview by the search committee*". (CR 1: 872, sec.10 last sentence)

================================

7

**Appellant VanZante Was Qualified for Hire and was NOT Prohibited From Applying for the Chair Position by the 2006 Release and Settlement Agreement with TAMU-CC.**
**(response to Appellee Brief Sec. A, p.8 -13)**

<u>Appellant incorporates herein as if set forth verbatim Appellant's detailed argument on this issue set out in Appellant's First Amended Brief at p.20 to p.32</u>.

Appellee asserts that Vanzante, Appellant, was not qualified for the position because Appellant was barred from applying for the Chair position because of the 2006 Release and Settlement Agreement with TAMU-CC.

**Not Relevant**

Appellant has filed a discriminatory failure to hire claim regarding Defendant hiring a younger applicant over Appellant for a department Chair opening in August of 2012. Defendant's argument is not relevant to Defendant's MSJ to dismiss Appellant's: Appellant's 2006 Release and Settlement Agreement with Texas A&M Corpus Christi *was not the or a basis that Defendant did not hire Appellant for the Chair position;* and cannot negate the discriminatory act of which Appellant complains: Defendant's wrongful act of hiring the younger applicant over the Appellant.

<u>Basis of Hiring Decision</u>
(also see Appellant's First Amended Brief: p.12-17)

<u>August 6, 2012</u>:    Dean Dock notified the faculty that he had hired Carol Sullivan for the Chair opening  and entered into a contract with  Carol Sullivan

who agreed to all terms- Associate Dean Aukerman and Provost Gandy are copied. (CR1: 842-844)

-- (Sullivan's handwritten acceptance on last page, (CR 1: 844)
*"I accept this proposal without any revisions. Thank you for the opportunities and I look forward to contributing to the excellence at Texas A&M-Kingsville."*

*"Respectfully,*

*Carol Sullivan (signature)*

August 23, 2012: Appellee / Defendant identified the reason Dr.Sullivan was hired and the reason Appellant was not hired. (CR 1: 850)

*Dr.Vanzante does not meet the two salient position requirements: (1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status.* (CR 1:850)

Dr.Krueger testified that Dean Dock provided the reason Appellant was not hired. (CR 1: 698, p.28, lines 10-15; CR 1: 701, p.39, line 23 to p.40, line 16).

August 31, 2012: Defendant identified on its official Applicant Log that Carol Sullivan was the candidate 'hired'. (CR1:885: Sullivan *'hired'*; Vanzante *'not hired'*)

September 13,2012: Defendant removed Dock as the Dean and Associate Dean Aukerman became Interim Dean. (CR 1:876) (CR 1: 724, p.29, lines 18-24).

Dr.Aukerman testified that, before Dr.Aukerman became Interim Dean, Sullivan had accepted Dean Dock's offer; Dean Dock had informed Provost Gandy and the Defendant had closed the position. (CR 1: 739: p.86/1-10)

9

Provost Gandy instructed Interim Dean Aukerman that Sullivan was the person hired for the Chair opening and go with it. (CR 1: 725, p.30, lines 3-9) (CR 1: 724, p.28, line 25 to p.29, line 11).

Both Dr.Aukerman / Provost Gandy later signed off on Dean Dock's hiring Dr. Sullivan for the Chair position. (CR 1: 739: p.86/1-21)

Two years later, on September 17, 2014: Dr.Dock testified that he, Dr.Dock, was the decision-maker and stated: " *I hired Carol (Sullivan) as Chair of the Department of Accounting, and at the professorial rank of full professor"*. (CR1: 665, p.6, lines 15-19) (CR1: 664 for date of deposition).

==========================

**The 2006 Release and Settlement Agreement with TAMU-CC provided that Appellant could for the Chair position at issue in this suit.**

(Appellant incorporates his detailed argument on this issue at
Appellant's First Amended Brief at p.20 to p.32)

In addition:

February 24, 2012: Appellant applied for a posted opening for the Chair of the Department of Accounting and Finance. (CR 1:799). Defendant' job posting identified the opening as being *'the holder of a named Chair'*. (CR 1:781: job summary).

Dean Dock testified that "*a named Chair is an endowed Chair*", and the position opening was for an endowed Chair. (CR 1: 666 at p.9, lines 7-8; p.29, line 22 to p.30, line 3).

========================================

### The 2006 Release and Settlement Agreement with TAMU-CC
### Paragraph 3, Last Sentence

At the time of the 2006 Release and Settlement Agreement and while employed with Appellee, Appellant knew that TAMU Kingsville would be working to have an Endowed Chair position in the Department. (CR 1:658: sec.30). The Parties added the last sentence to Section 3 specifically allowing Appellant an unqualified right to apply for an endowed chair opening that might open in the futre and not subject to any restriction to be currently employed. (CR 1: 658: sec.30)

The parties agreed and ended Section 3 with a stand-alone provision:

**"*The Parties further agree that this paragraph (Paragraph 3) shall not apply to any applications Appellant may make to Texas A&M University--Kingsville, for employment in positions such as an endowed chair position that may become available after the execution of this agreement.*"** **(CR 1: p.776, last sentence sec. 3; same at CR 1: p.773, sec. 3--last sentence).**

**IF** Defendant's changes, as set out in its Motion for Summary Judgment and Appellee's Brief, that Appellant had any type of restrictions or had to be currently employed at TAMU Kingsville to apply for an endowed chair opening at TAMU Kingsville were the terms in the 2006 Settlement and Release Agreement with

11

TAMU Corpus Christi, **THEN** these terms would have been added to the wording of the 2006 Settlement and Release with TAMU Corpus Christi. (CR 1:660, sec.36; p. 659, sec. 35)

Appellant could have then accepted or rejected the limitation and wording; of which Appellant would have rejected. (CR 1: 655 sec.15; p.654, sec.10)

Just the opposite: such a restriction and meaning, as now asserted by TAMU Kingsville, was not included and the TAMU Corpus Christi Settlement. (CR 1: 778, sec. 3, last sentence) There is no wording in the 2006 Release and Settlement Agreement with Texas A&M Corpus Christi that Appellant's right to apply for an endowed Chair opening was limited to being currently employed; the parties' only limitation was that the opening "*become available after the execution of this agreement*". (CR 1: 773, 776--executed in Sept 2006)

## Extrinsic Evidence

Appellant must produce and rely upon extrinsic evidence, the Assistant Attorney General who crafted the 2006 RSA (Mr.Daniel Perkins), to assert this additional term to the 2006 RSA. If allowed, this would create a fact issue.

### Appellee Records Evidence Appellant Not Barred from Applying for advertised positions.

Set out in Appellant's 1st Amended Brief p. 29.

=====================================================

12

## Appellee Brief sec. A. ii. (p.9-10)

Appellee asserts: TAMU-K's AACSB accreditation did not require VanZante to resign.

Appellee misstates Appellant's argument.

The 2006 Release and Settlement Agreement with Texas A&M Corpus Christi actual wording is:

"*The Parties further agree that, for the purposes of this Agreement, any actions or applications required of Plaintiff by Texas A&M University--Kingsville to maintain his current position of Professor of Accounting, including, but not limited to applications for renewal of tenure and applications for summer teaching at Texas A&M University--Kingsville, shall be exempt from the restrictions set forth in Paragraph 3.*"

Appellant's First Amended Brief on pages  26-28 and 30-32 sets out how this provision came to be drafted.

It is not disputed that Appellee TAMU Kingsville was going to apply for AACSB accreditation at some time after 2006, at which time Appellee would require faculty to become AACSB AQ certified.   The 2012 Chair job description's required minimum qualifications included that the candidate must  *(2)*  *be AACSB Academically Qualified (AQ)* and preferred qualification was "*AACSB accreditation*". (CR 1:782).

In 2007, the opportunity arose that Appellant could work at University of Texas Pan American (UTPA) which was an AACSB accredited doctoral granting

13

institution and UTPA was going through its AACSB re-accreditation process. (CR 1:p.654, sec.12).

Prior to leaving Defendant and submitting his resignation to work at the Univ. of Texas Pan American: (Appellant 1st Amended Brief p.27-28)

Appellee / Dean Stanford instructed Appellant that Appellant resigning and returning to work with Appellee at a later date would be acceptable to Appellee (to Dean Standford and Appellee's Provost Clayton, to TAMU System and acceptable under the 2006 TAMU Corpus Christi Settlement and Release Agreement. (CR 1: p.655, secs.14, 15)(CR 1: p.654, sec.14).

## Party Admissions

**The District Court found Dean Stanford's and Provost Clayton's statements were not hearsay and admissible under TRE 801(e)(2) as party admissions, TRE 803(3) then existing state of mind of motive, intent, plan regarding Appellant resigning and re-applying at a later date; and as non-hearsay to show the effect of the statement on the Appellant, not for the truth of the statement. (CR 1: 1007-1010)

Appellant would not have left his position at TAMUK and would have rejected the offer to join the University of Texas Pan American if Appellee / Defendant had not agreed that Appellant could resign in 2007 and return at a later date to work for Defendant under the 2006 Settlement and Release with TAMU Corpus Christi. (CR 1:p.655, sec.15). "*Dean Stanford told me* (Appellant) *that this was acceptable to the Provost and the System.* (CR 1:p.655, sec.15; 1007-08, 1010)

14

=================================================

**<u>Appellee Brief sec. A. iii. (p.10-13)</u>**

Appellee asserts: VanZante's resignation did not create a right to future
employment opportunities

Appellant sets out a detailed response to this issue in Appellant's First
Amended Brief at pages 20 to 32 regarding leaving Appellee and returning; and
application for endowed Chair posting.

================================

## APPELLEE'S ALLEGED REQUIRED GENERAL QUALIFICATIONS

**Appellee's Brief Sec. B pages 14-16 asserts Appellant did not meet the Chair
position's alleged general qualifications.**

Appellee asserts a new alleged general qualification which was not actual
required qualifications and not part of the actual hiring decision process.

Appellant addressed this issue in detail at Appellant's First Amended Brief
pages 48-53 of which Appellant incorporates herein as if set forth verbatim.

Defendant's Written Job Posting identified the required 'Minimum Qualifications'

were:  (CR 1: 782) Candidate must be professionally qualified to:

　　　(1) hold the rank of Full Professor and
　　　(2) be AACSB Academically Qualified (AQ).

1.　　Appellee Defendant acknowledged to the EEOC that Appellant met the
positions requirements and was a qualified applicant.  (Appellant 1st Amended
Brief p.43-44)

15

2. Appellee identified Appellant as a qualified candidate for hiring on its Applicant Logs created after the hiring decision. (Appellant 1st Amended Brief p.67-68)

================================
### Defendant Acknowldged to the EEOC Investigator
### that Appellant met all required Qualifications for the Chair Position

April 5, 2013, responding to the Equal Employment Opportunity Commission investigation, Defendant acknowledged to the EEOC that Appellant did meet the Chair position's required qualifications. (CR 1: bottom of CR 865 to top of CR 866)

*"The application system determined three applicants did not meet minimum qualifications, leaving five candidates who did meet minimum qualifications. These were:*

> ***Dr.Neal Vanzante"*** **(Appellant)**
> plus 4 others

--------------------------

Appellee identified Appellant as a qualified candidate for hiring
on its Applicant Logs created after the hiring decision.
(Appellant 1st Amended Brief p.67-68)

Appellee's Hiring Authority identified any applicant whose application established that the applicant did meet the postion's qualifications in order to be processed as acceptable applicant and identified Appellant as a candidate meeting the position qualifications. (CR 1: 883-884, 885-886)

16

(1)  August 31, 2012 (CR 1: 885-886) and September 18, 2012, Applicant Logs identified Appellant as one of four applicants identified meeting required qualifications but 'not hired'. (CR 1: 883-884).

Applicants meeting required qualifications: (in order as listed)

| | |
|---|---|
| Haque, Mohammed | Not Hired |
| **Vanzante, Neal (Appellant)** | Not Hired |
| Rabbani, Mohammad | Not Hired |
| Ghosh, Dillip | Not Hired |
| Sullivan, Carol | Hired |

Applicants not meeting required qualifications: (in order as listed)

| | |
|---|---|
| Francis, Conrad | Did Not Meet Min Quals |
| Hopson, James | Did Not Meet Min Quals |

==============================================

**Appellee's Brief Sec. B: p.14-16**

**General Qualifications: Appellant provides and incorporates his detailed response on this issue set out at Appellant's First Amended Brief pgs. 48-53.**

1. Appellee's alleged general qualifications of  Leadership, Administration, and Interpersonal and professional communication were not requirements for the selection and not used in the decision process. (Appellant 1st Amended Brief p. 49)

2. These  General Qualifications were not applied to Dr.Sullivan, the younger applicant selected; and Appellee determined Dr.Sullivan did not possess these general qualifications.  (Appellant 1st Amended Brief p. 53-54)

3. Appellant met these General Qualifications  (Appellant 1st Amended Brief p.49-53)

17

4. Appellee's evidence to support its argument on this basis was not part of the selection or decision-making process. (Appellant 1st Amended Brief p.55).

Appelle has asserted that the following 'general qualifications' were the basis of the hiring process:

1. Leadership
2. Administration
3. Interpersonal and professional communication

No one has testified that these factors were used or applied in the actual decision-making process.

================================

Appellant provided evidence that Appellant met
the these alleged general requirements and all requirements for Full Professor

Appellant addressed this issue in detail at Appellant's First Amended Brief pages 49-52 of which Appellant incorporates herein as if set forth verbatim.

Appellee Defendant had qualified and classified Appellant as meeting all Appellee's requirements for Full Professor, employing Appellant as a Full Professor for 18 years. (CR 651, sec. 2; CR 799, para 2).

Associate Dean Aukerman had worked in the College of Business with Appellant from about 2002, to 2007 (CR 1: 720, p.10,line 19, to p.13, line 5). Dr. Aukerman testified Appellant possessed skills of 'Leadership, Administration, Interpersonal and professional communications' : (CR 1: 719, p. 8, line 13 to p.9, line 12)

18

Q: Okay. Do you know Dr. VanZante?

A: Yes.

Q And how did you come about --

A Well, initially I met him because we both
  worked in the College of Business Administration. He had been here a few
  years when I was hired. And that would have been in 2002.

Q Have you ever written any letters of reference for Dr. VanZante?

A Yes, I have.

Q And have you ever nominated Dr. VanZante for like something called a
  Regents Professorship?

A Yes.

Q What is that?

A That's an award that the A&M system gives to faculty members who have
  performed above and beyond the call of duty, I guess you could say, in, over a
  number of years at the university.

Q And what about any nominations for outstanding faculty here at TAMU-
  Kingsville? Have you ever --

A Well, I remember I nominated him for an Outstanding Educator award for the
  State Accounting Association. I honestly don't remember if I've done that
  for an on-campus teaching award or not. I don't recall. But I know I did for
  the State Accounting Society.


=====================

Appellant's application and resume provided evidenced Appellant possessed

skills of Leadership, Administration, Interpersonal and professional

communication. (Appellant First Amended Brief: p.51-53) This included above

Exceptional Annual Evaluations (CR 1: 660, sec. 38) (CR 1: 817); performance

and achievement awards (CR 1: 816); member of twelve (12) Defendant College

19

of Business Committees (CR 1:815); high student evaluations (CR 1: 817 mid page); service on boards of directors of organizations in Appellant's Field of Accounting (CR 1: 814, top).

**Defendant did not apply these 'general qualifications' to the Younger Person Hired:   Carol Sullivan,**

**------**

<u>Defendant's Own Records Establish Carol Sullivan did not possess these 'general qualifications' of Leadership, Interpersonal and Professional Communications</u>

Appellant addressed this issue in detail at Appellant's First Amended Brief pages 53-54 of which Appellant incorporates herein as if set forth verbatim.

The Chair Search Committee members evaluated and determined Dr. Sullivan did not meet qualifications, therefore did not possess this newly alleged general qualification  of 'Leadership, Administration, Interpersonal and professional communications' The Chair Search Committee members made the following written factual findings:

(1)    Dr. Sullivan  did not meet the position's qualifications and not acceptable candidate finding: (CR 1: 838)( CR 1: 837) (CR 1: 836)

(a)  "*Odd personality (which isn't necessarily a weakness but seem too much like  the person who just left the position we are trying to fill...)*"

(b) "*Don't think that she would be able to work well with our students.*"

(c) did not exhibit a positive feel to others

20

Associate Dean Aukerman, the Chair of the Search Committee, determined Sullivan not qualified candidate:

     1. notified the Hiring Manager that the faculty had determined Sullivan did not possess required qualifications (CR 1: 840) and that Dean Dock's hiring of Carol Sullivan was an "*Inappropriate, unethical, and/or illegal action*". (CR 1: 871, 872 sec.10)

     2. notified Provost Gandy that Dr.Sullivan did not meet the position's qualifications and not qualified to be hired.(CR 1:846)

=================================

<u>Defendant's Supporting Evidence was Not Used or Relied upon by Decision-makers in Not Hiring Appellant</u>:
Appellant's 1st Amended Brief p.55

Appellee basis the new 'general qualifications' argument on selected employee file documents dated 1997 to 2002 (Defendant MSJ Exhibits 10, 11, 12, 14, 15) which were NOT part of the decision-making process.

(a) <u>Defendant MSJ Exhibit 15 </u>(CR 1: 477):   1997 Memo
(b) <u>Defendant MSJ Exhibit 12 </u>(CR 1: 375-376):   2002 Memo
(c) <u>Defendant  MSJ  Exhibit  10  (CR  1:  366-371)</u>:   2001 Evaluation which Appellant filed appeal
(d) <u>Defendant MSJ Exhibit 11 (CR 1: 373)</u>:  2002 Letter involving Appellant's grievance
(e) <u>Defendant MSJ Exhibit 14 (CR 1: 475)</u>:  2002 Memo

The basis for hiring Sullivan and not hiring Appellant was based solely on a review of their applications. (CR 1: 697, p.24, lines 15-22) Neither Appellant's application nor any other applications contained employee files that  defendant

21

now uses to assert this new reason. (CR 1: 797-819) CR 1: 797-819 Appellant

applic;  CR 1: 821-832--Sullivan applic)(CR 1: 477, 366-71. 475, 373)

======================================

# Appellee Brief Sec. C.i. p.16-18

## Appellee asserts: VanZante was not qualified to hold the rank of Full Professor because VanZante did not show he was a professional, facilitator, and a trustee

This is a newly created basis.

**Defendant did not apply these same  qualifications
to the Younger Person Hired:   Carol Sullivan,
and
Sullivan did not have these qualifications**
**------**
Defendant's Own Records Establish Carol Sullivan did not possess these same general qualifications
(Appellant's 1st Amended Brief p.53-54)

Appellant's Search Committee and Assist.Dean Aukerman findings Sullivan did

not meet qualifications.


Appellee's argument based on documents not used in hiring process

Appellee relies upon documents which were not part of, not used in and not

relied upon in actual the decision-making process. (Appellant's 1st Amended Brief

22

p. 58).   Appellee bases this assertion on CR 1:370-71, CR 1:475, CR 1: 477

(Appellee Brief at p.17)

CR 1: 370-71:  part of 2001 Evaluation act CR 1: 366-371
          CR 1: 370: Dean wrote: "Congratulations on a very good annual
                 evaluation"
CR 1: 475:      2002 Memo
       Dean wrote: "*Congratulations on another fine annual
           evaluation. Your teaching evaluations, professional growth
           and development, research, and service were all excellent'*.
CR 1: 477:      1997 Letter


<u>Appellant met ALL  Appellee Defendant's requirements and qualifications to hold
the position of Full Professor</u>

Defendant qualified and employed Appellant in the rank of Full Professor

for 18 years: 1989 to 2007. (CR 1: 799-800 -applic / resume; CR 1: 650-651, sec.

7; CR 1: 653, sec. 10).


**Appellant was Professionally Qualified to hold the rank of Full Professor**

Appellant's policy on appointments  to a Full Professor are set out in

Defendant's Faculty Handbook, Sec. B.4.1.6(b).  (CR 1: 651, sec. 3; CR 1: 911)

Defendant's Faculty Handbook required the individual to have held the  rank of

Associate Professor (or higher) for at least five years prior to being eligible for

appointment to Full Professor.  (Ex. 1: p.2, sec. 3; Ex.36-3 ---tamu 0196)

**Dr.Richard Aukerman,**

23

**Search Committee Chair and Associate Dean of the Department
(Appellant's 1st Amended Brief p.36-38)**

Dr.Aukerman was employed by Appellee in administrative positions from 2002 to 2013. (Ex. 4: p.10, line 19 to p.13, line 5) and handled "lots" of faculty hirings either as being "*on search committees or chair of a search committee, or doing the hiring as an Interim Dean*" and was involved in the hiring of "*more than half of the faculty that are currently in the college*", (CR 1: 722, p.19, line 25 to p. 20, line 19), and worked with Appellant for six (6) years: 2002 to 2007. (auk: p.8, lines13-19; p resume, p. ) (CR 1: 782 mid page).

Aukerman testified Appellant was qualified to be hired as a "*Full Professor*". (see CR 1: 738, p.82, lines 5-21)(Appellant's application at CR 1: 797-819; teaching employment history at CR 1: 800).

Aukerman establishes that Appellant's break in classroom teaching time and not being currently teaching at time of applying was not relevant to and does not prevent Appellant from being qualified to be hired as a Full Professor. (CR 1: 738, p.82, lines 5-21)(Appellant's application at CR 1: 797-819; teaching employment history at CR 1: 800).

===============================

**Appellee Brief Sec. C. ii. p.18-20**

**Appellee asserts: Appellant VanZante was not AACSB Academically Qualified because Appellant had not taught for 18 months prior to applying.**

Appellant Vanzante's First Amended Brief addresses this issue in detail at p.60 to p. 66,

Appellee's assertion is false: A faculty member maintains his AASCB AQ status by undertaking scholarly activities in his filed during the five year period not by teaching.

## APPELLANT WAS AACSB ACADEMICALLY QUALIFIED

Appellant was only applicant who Appellant had actual knowledge was AACSB AQ qualified at the time of applying. (CR 1: 848)

### ii. Appellant was AACSB Academically Qualified

Defendant's MSJ asserted that Appellant lost his AACSB AQ status by not teaching for the 18 months prior to applying. (CR 1: 304-305, sec ii)

**Defendant's Assertion that AACSB Standards Required
to be 'currently employed' at time of Application is FALSE
(Appellant's 1st Amended Brief p.60-63)**

Defendant processed Appellant's application as a qualified candidate through-out the entire hiring process by Defendant's Hiring Authority. (CR 1: 883-886, 888, 892)

Defendant Admits to EEOC Appellant is AACSB AQ

Defendant admitted to the EEOC that Appellant met the Chair position's minimum qualifications which included being professionally qualified to be AACSB Academically Qualified. (CR 1: 865-866; CR 1: 782))

**Judge Vela denied Defendant's prior Motions asserting
this same argument
(see Appellant's 1st Amended Brief p.60-61)**

Evidence Reasonable Minds Can Differ

Defendant made this same argument and the presented same exhibits to Judge Vela on March 10, 2015. (CR 1: 23-26, 23 to 112--Defendant's Summary of Argument with attachments on Plea to the Jurisdiction and No-Evidence Summary Judgment) that Appellant was not qualified because Appellant lost AACSB AQ status because: (1) Appellant was not currently employed at time of applying; (2) Appellant had not taught in a classroom for prior 18 months. (CR 1: 24-29)

Judge Vela found a fact issue existed and denied Defendant's pleadings to dismiss on this argument. ( CR 1: 291, 292).

**AACSB does not have a requirement that actual teaching of courses is
required to maintain AACSB AQ status.
(CR 1: 660-61, sec.40 ;  CR 1: 896-901 -- AACSB standard 10)**

AACSB Standard 10 and AACSB White Paper Establish
Appellant Maintained his AACSB AQ Status
(see Appellant's 1st Amended Brief p.62-65)

26

Defendant admitted in both its March 9, 2015, Summary of Argument presented to Judge Vela and in its Motion for Summary Judgment that the AACSB does not have a requirement regarding an 18 month break in employment, but that the AACSB looks at a five (5) year period for accreditation of AQ (academically qualified) status. (CR 1: 25, Mar 9, 2015, Summary of Argument, p.3, sec. 6: *'evidence of developmental activities within the past five years...*" citing AACSB Standard 10) (CR 1:304, sec. i: "*discipline based scholarship over the previous five years*" citing its exhibit 16 which is AACSB Standard 10 as shown identified at CR 1: 295).

AACSB Standard 10 identifies a "*non-exhaustive list of possible activities that faculty may undertake to support the maintenance of academic or professional qualifications"* -- too maintain AACSB AQ status*:* (CR 1: 900 AACSB Standard 10 - mid page)(CR 1: 904: mid page)

> Relevant journal and/or other business publication editorships and/or
>    editorial board/committee service
> Consulting activities that are material in terms of time and substance
> Faculty internships
> Sustained professional work supporting qualified status
> Leadership positions in recognized professional/academic societies
> Advanced academic coursework
> Relevant, active service on boards of directors
> Documented continuing professional education experiences
> Significant participation in professional and/or academic conferences

27

==========================

Defendant has produced an AACSB White Paper Deploying Academically Qualified Faculty to base its assertion that actual teaching is required to maintain AACSB AQ status. (CR 1: 545 Def Ex. 22). This document actually sets out the same ways to maintain AACSB AQ status as AACSB Standard 10. The document states: (CR 1: 904, mid page)

<u>Activities Sufficient to Sustain Academically Qualified (AQ) Status</u>

"All faculty members are expected to demonstrate activities that maintain the currency and relevancy of their instruction. Faculty members can maintain qualifications through     a variety of efforts including the production of intellectual contributions, professional development, and current professional experience."

## APPELLANT ESTABLISHED HE MAINTAINED AACSB AQ STATUS
### (see Appellant's 1st Amended Brief p.63-66)

Defendant's MSJ admitted that AACSB AQ status is maintained / sustained by under AACSB guidelines if professor /faculty *'continue to undertake appropriate development activities that sustain his ..... intellectual capital and currency in the field of teaching'*. (CR 1: 305 middle para ).

This wording means that a person needs to remain "<u>current in their field of teaching</u>." Appellant's "field of teaching" is accounting. (CR 1:660, sec.40)   This does not mean someone needs to be teaching. (CR 1:660, sec.40)  The AACSB Sec. 10 does not mention classroom teaching as a requirement to maintain AQ

28

currency. (CR 1:660, sec.40). AACSB Standard 10 clearly sets out what activities are necessary to "remain current." Actual Teaching is not a requirement. (CR 1:661, sec.40 top pg).

Publishing articles is the main means to maintain AACSB AQ accreditation. (CR 1: 900 mid page, 904 mid page)

## Appellant's Five Year Look Back Period Maintenance of AACSB AQ Status
### (See Appellant's 1st Amended Brief p.64-65)

Defendant admits in its Motion for Summary Judgment that there is a "*five-year look back used in making applications for AACSB accreditation*". (CR 1: 305, top sec) By defendant's own acknowledgement of a five year look back period, Appellant was AACSB AQ at the time of the Defendant's selection of the Chair opening in August of 2012.

Based on Appellant's December 2009 formal record of AACSB AQ while employed at the UTPA which ended May of 2010 (CR 1: 890), Appellant would have remained AACSB Academically Qualified until May of 2014 without any activities.

August 2012: date of employment decision. (CR 1: 892, 842-844)

==============

**Appellant Maintained Currency in Appellant's Field
as Required to Maintain AACSB AQ Status**
(see Appellant's 1st Amended Brief p.65-66)

29

<u>Appellant's Evidence of Maintaining AACSB Academically Qualified status</u>

Director of Research Krueger and Associate Dean testified Appellant needed only 3 publications during the immediate three year period (2009-2012) prior to Appellant's application to maintain AACSB AQ status. (CR 1: 914;  CR 1: 700, p.37, lines 16-23; CR 1: 701, p.38, lines 8-19)

Appellant  had  eight acceptable quality  publications (all of which were in journals with acceptance rates of less than 30% listed in Cabell's director).  (CR 1: 652-653:  sec.6 )(Ex.11: CR 1: 803-04).

Appellant's 1st Amended Brief p. 66:  Identifies Appellant's other continuous AACSB approved activities to maintain currency and AACSB AQ status.

==================================

**Appellant met the Position's Preferred Qualifications**

The Chair Job Posting identified the position's preferred qualification as:  page 3. (CR 1: 782)

*Preferred Qualification:     AACSB accreditation*

Appellant was formally accredited as AACSB Academically Qualified at the time of his application process. (CR 1: 890, 799, 800; CR 1: 652, sec. 6)

========================================================

**Appellee asserts:   TAMU-K's first record indicates VanZante was not qualified for the position because he did not meet the general and academic qualifications required for the position.**

Appellee / Defendant did not raise this issue in its Motion for Summary Judgment.

To support this argument, Appellee then refers to Dr.Krueger's first draft of a basis for the hiring selections --  CR 1: 848.

August 23, 2012: the date this document is marked, and which lists the reasons for hiring Dr.Sullivan and for not hiring the other four qualified candidates which included Appellant. (CR 1: 848)

Appellee did not produce this document to the EEOC on April 5, 2013, as the Appellant's official hiring reasons. (CR 1: 850; CR 1: 862, 878-868).   Appellee presented the August 23, 2012, version written by Dean Dock as its official reason for the employment decision. (id)

September 17, 2014:  Dr.Dock was deposed by Appellant. (CR 1: 665)

December 2, 2014: Dr.Krueger's deposition -- First date it was revealed that Dr.Krueger made a draft document listing the reasons for the hiring decision of which Dr.Krueger had previously provided that to Appellee's internal counsel. (CR 1: 6911 697, p.24, line 3 to p.25, line 6).

December 2, 2014: Dr.Krueger testified that Dean Dock, not Dr.Krueger, provided the basis Appellant was not hired, even though Krueger signed the August 23, 2012, document. (CR 1: 697, p.25, line 15);

After Dean Dock announced to the faculty that Dr.Sullivan was hired, Dean Dock then instructed Krueger, Defendant's Director of Research for the College of Business, to write up a basis for hiring Sullivan and basis for not hiring the other four qualified applicants. (CR 1: 697, p.24, lines 2-14)(CR 1: 848-Krueger's basis). (CR 1: 701, p.38, lines 8-12),

Dr. Krueger then created a draft version. (CR 1: 697: p.24, lines 19-25). (it is this draft version that is the basis of Appellee's argument in this section.)

Of the four non-hired qualified applicants, Dean Dock instructed Dr.Krueger to only change the reason for not hiring Appellant and Dock provided the explanation. (CR 1: 697, p.25, line 15) (CR 1: 698, p.28, lines 10-15; CR 1: 701, p.39, line 23 to p.40, line 16):

Dock's basis:
*Dr.Vanzante does not meet the two salient position requirements: (1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status.* (CR 1:850)


-------------------------------------------------

Dr.Krueger's version stated:

32

a. Appellant Vanzante had gone to work for a university that was already AACSB-accredited; and

b. Appellee "*was interested in someone who is willing to work here to make our CBA an AACSB-accredited institution.*" (CR 848--last sentence in alleged reason Vanzante was not hired)

Dr.Krueger's words evidence that Appellant's employment at an AACSB accredited institution is exactly what Appellee was looking for: Appellant Vanzante had started at UTPA to gain AACSB experience and AACSB accreditation process which is what Dr.Krueger said Appellee wanted. (Appellant 1st Amended Brief p.26-top 29

Dr.Krueger: Dean Dock did not think Appellant leaving TAMU Kingsville (Appellee) or petty issues of past employment were relevant to the hiring decision. (CR 1: 698, p.27, lines 3 to 14).

April 5, 2013, Appellee acknowledged to the EEOC that:

*"In Dr.Krueger's letter to Dean Dock recommending Dr.Sullivan for the Department Chair position, he stated that 'Dr.VanZante does not meet the two salient position requirements: (1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status."* (CR 867, 2nd para from bottom)

Appellee Defendant represented to the EEOC that Krueger wrote the August 23, 2012, document signed by Dr.Krueger, when the truth was Dean Dock provided some explanations. (CR 321).

April 5, 2013, Appellee acknowledged to the EEOC that Appellant met both of the qualifications for the Chair position:

*"...Dr.Krueger's conclusion that Dr.VanZante did not possess professorial experiences that met current college expectations of a Full Professor and did not meet AACSB Academically Qualified (AQ) status may have been somewhat speculative at the time..."* (CR 868, 1st full para).

Appellee follows this admission with:

*"..the fact remained that Dr.Sullivan was the best candidate for the Department Chair position, as determined by the Search Committee, Dr.Krueger, and Dr. Dock."* (CR 868, 1st full para, last 3 lines).

Appellee knew this was false when made to the EEOC: the Search Committee and Chair of the Search Committee had determined Dr.Sullivan was not qualified and not an acceptable candidate for the Chair position. (CR 1: 836-839; 840, 871, 872 sec.10; 846)

===================

**III. Appellee's asserted legitimate reasons: p.22-33**

**III.A: TAMU had several legit reasons p.23**

**A.i p.23: Appellee alleges the The 2006 Release and Settlement as the legitimate reason Appellant was not hired.**

2006 TAMU Corpus Christi Settlement and Release

34

Appellant's 1st Amended Brief at Pages 20-32: Appellant was not prohibited from applying for the Chair position: Appellant sets out in detail at Plaintiff's 1st Amended Brief pages 20-32 facts and argument establishing 2006 Release and Settlement excluded Appellant's application for this endowed Chair position.

<u>Appellant's 2006 Release and Settlement Agreement with Texas A&M Corpus<br>Was Not the Basis Defendant Did Not Hire Appellant</u>

Appellant's 1st Amended Brief, Pages bottom p.12 to top of p. 17: The 2006 Release and Settlement was not a basis of the decision not to hire Appellant in August of 2012.

September 17, 2014: Dean Dock testified that Dock hired Dr.Sullivan: stating "*<u>Carol, I hired Carol as Chair of the Department of Accounting, and at the professorial rank of full professor</u>.*" (CR 1: 664; 666, p.6, lines 15-19)

<u>August 6, 2012</u>: Dean Dock hired and contracted with Sullivan: offered Sullivan the Chair position and Sullivan accepted. (CR 1: 842-844)

-- (Sullivan's acceptance on last page, (CR 1: 844)
*<u>"I accept this proposal without any revisions. Thank you for the opportunities and I look forward to contributing to the excellence at Texas A&M-Kingsville</u>.*"
*"Respectfully,*

*Carol Sullivan (signature)*

35

Dean Dock provided the basis Appellant was not hired:  Dock's "*changes dealt with Neal Vanzante*". (CR 1: 697, p.25, line 15); . (CR 1: 698, p.28, lines 10-15; CR 1: 701, p.39, line 23 to p.40, line 16).

Basis Dean Dock stated Appellant was not hired: (CR 1: 850)

*Dr.Vanzante does not meet the two salient position requirements: (1) professorial experiences that meet the current college expectations of a Full Professor and (2) AACSB Academically Qualified (AQ) status.*

========================

**Appellee Brief: Sec. A.ii. p.23-25:**
**Appellee asserts that Sullivan was better qualified for the position of Chair**

**Appellant addresses this issue in Appellant's First Amended Brief at p.80-83.**

**<u>Defendant's Own Records Establish Carol Sullivan was not Qualified</u>**

The Chair Search Committee members Associate Dean Aukerman, the Chair of the Search Committee evaluated and determined Dr. Sullivan was not qualified for hire. (CR 1: 838)(CR 1: 837)(CR 1: 836)(CR 1: 840) (CR 1: 871, 872 sec.10)(CR 1:846)

<u>Dr.Sullivan did not meet the Appellee's requirement of five year employment in rank to qualify for Full Professor</u>
(Appellant's 1st Amended Brief at p.80-83)

Appellant sets out this argument in detail at Appellant's First Amended Brief, pages 80-83.

Defendant required five years of employment in position of Associate Professor or higher rank before qualifying to be placed into Full Professor position. (CR 1: 651, sec. 3)(CR 1: 911, sec. B.4.1.6(b)--Faculty Handbook). Sullivan had only three years of employment in position of Associate Professor at the time Defendant hired Sullivan.   (CR 1: 651, sec. 3)

Dr.Sullivan's application and cover letter did not provide a work history to determine whether Sullivan met the minimum required qualification of five years in rank to be a Full Professor. (CR 1: 823-825 Sullivan application).

December 11, 2013, fifteen months after Sullivan was hired, Appellee produced a new work history to the EEOC to attempt to show Sullivan met requirement of employment in rank  for five years. (CR 1: 908, 906)

Defendant had to  intentionally misrepresent Sullivan's work history to the EEOC adding Dr.Sullivan's 2012-2013 year of employment with the University of St. Thomas which occurred after Appellee hired Sullivan in August of 2012. (CR 1: 908)

Appellee also identified Sullivan's positions of Visiting Associate Professor which are not positions of 'rank'. (CR 1: 651, sec. 3).

==============================

37

**Appellee Brief  III.B.i. p.26-27:**
**Appellee alleges Dr Aukerman hired Sullivan**

This is not correct. Dr.Aukerman had found Dr.Sullivan  not qualified and unacceptable for the position. CR 1: 840, 846, 872 sec. 10)

### Decision-maker

Appellant provides detailed factual support to show Dean Thomas Dock was the legal / actual decision-maker at Appellant's 1st Amended Brief bottom of page 12 to top of page 17.

This includes:

March 20, 2012:  Dean Dock drives to Victoria, Texas, to privately interview Carol Sullivan (CR1: 834) (CR1: 728, p.43, line 14 to p.44, line 8)

Dean Dock brings Carol Sullivan to campus for interview despite the Search recommending not to interview Sullivan. (CR 1: 872, sec.10)

July to August 2012, the Chair Search Committee and Faculty met with Carol Sullivan and determined  that Carol Sullivan was not qualified and 'unacceptable' for the Chair position. (CR1: 836-839).

July 16, 2012:  Associate Dean Aukerman, notified Defendant's Hiring Manager that the College of Business Search Committee had determined that Sullivan was not qualified for the chair position. (CR1: 840)

August 6, 2012: Dean Dock notified the faculty that he had hired Carol Sullivan for the Chair opening and entered into a contract with Carol Sullivan who agreed to all terms of employment-- Associate Dean Aukerman and Provost Gandy are copied. (CR1: 842-844)

August 15, 2012: Associate Dean Dr.Aukerman notified Defendant's Hiring Authority, that Dean Dock's hiring of Carol Sullivan had been an "***Inappropriate, unethical, and/or illegal actions of Dean Tom Dock***". (CR1: 871; 872 sec.10)

(10) hiring of Carol Sullivan for the Accounting and Finance Department Chair position who was not recommended for interview by the search committee and who the faculty have voted 8 to 1 that Sullivan was '*unacceptable*'. "*Tom Dock had decided previously that he wanted to hire her*." (CR 1: 872, sec. 10)

August 16, 2012: Associate Dean Aukerman notified Provost Gandy that the department had determined that Sullivan was not qualified for nor acceptable for the Chair position." (CR1: 846)

August 29, 2012: Appellee notified Appellant "*the search has been successfully completed*" and Appellant "*was not the candidate selected for the position*". (CR1: 852)

August 31, 2012: Defendant identified in its Applicant log that Carol Sullivan was the candidate 'hired' and Vanzante '*not hired'*. (CR1:885)

Two years later, on September 17, 2014: Dock testified that Dock was the decision-maker and stated: "*I hired Carol (Sullivan) as Chair of the Department*

39

*of Accounting, and at the professorial rank of full professor".* (CR1: 665, p.6, lines 15-19) (CR1: 664 for date of deposition).

============================

September 13,2012:  Defendant removed Dock as the Dean and Associate Dean Aukerman became Interim Dean. (CR 1:876) (CR 1: 724, p.29, lines 18-24).

Provost Gandy instructed Interim Dean Aukerman that Sullivan was the person hired for the Chair opening and go with it. (CR 1: 725, p.30, lines 3-9) (CR 1: 724, p.28, line 25 to p.29, line 11).

September 19, 2013:  Interim Dean Aukerman sends memo to  Defendant's HR Director and to Provost Gandy: (CR 1:927)

> *"Upon completion of the search process it was determined that*
> *Dr.Carol Sullivan was the most appropriate fit for our needs at this time."*

Both Interim Dean Aukerman and Provost Gandy knew this reason was false at the time it was created to be Defendant's official hiring record. Faculty Search Committee and Aukerman had determined Sullivan unacceptable. (CR1: 840) (CR1: 871; 872 sec.10) (CR1: 846)

Defendant did not reopen the chair selection process after Dock's removal as Dean;  and  Dr.Aukerman testified that the position should have been re-advertised after Dean Dock received the faculty determination that  Sullivan was not

40

qualified. (CR 1: 724, p.29, line 23 to CR 1:725, line 2).  (CR 1: 723, p.25, line19 to CR 1: 724, p.26, line 20)

After Dr.Aukerman became Interim Dean in September of 2012, Dr.Aukerman met with Provost Gandy who instructed Dr.Aukerman that Dr.Sullivan would be hired for the Chair opening. (CR 1: 725: p.30, lines 3-9). Dr.Aukerman testified that Appellant closed the position; and  Dr.Aukerman and Provost Gandy signed off on Dr.Dock's hiring of Dr.Sullivan. (CR 1: 739:  p.86, lines 9-15)

An employer does not negate the discriminatory actions or discriminatory influence of its supervisor by having a third person sign off on the hiring decision. (*Gee v Principi*, 289 F.3d 342, 346, (5th Cir. 2002)

### Tex.Labor Code Used Motivating Factor

Plaintiff can establish an unlawful employment action if age was a motivating factor even if other factors also motivated the employment action. (See Tex.Lab.Code Sec. 125(a).

"*if a supervisor performs an act motivated by antimilitary (unlawful) animus that is intended by the supervisor to cause an adverse employment action, and if that act is proximate cause of the ultimate employment action, then the employer is liable (under USERRA)"*    Staub v Proctor Hosp*., 131 SW.Ct. 1186, 1193 (2011)

41

The presences of other alleged basis for not hiring an employee does not save an employer from liability because causation is under the 'motivating factor' standard. *Ridley V Harris County*, 2011 US Dist LEXIS 42219: end of retaliation section).

=============================

**ii. January 7, 2013, start date.**

Appellee asserts: Sullivan the only qualified applicant, "was not able to start until after her commitment for that school term had ended."  p.27

Appellant has shown Appellee had determined Dr.Sullivan was not qualified.

The job posting identified January 7, 2013, as the date the Chair was needed to start working as Chair of the Department. (CR 1: 780). The job posting does not state it is the preferred date. (CR1: 780).

Martin Brittain, Appellant's Hiring Manager, testified that the normal school term would be Sept. 2012, to May 2013; and the Appellee needed someone to start in the middle of that  school term. (CR 1: 755: p.33, lines 10-20).

Martin testified that Appellee required faculty positions to be advertised. (CR 1: 755: p.30. lines 5-14);    Dean Dock changed the start date without re-advertising the position in order to hire Dr. Sullivan. (CR 1: 780, 842-844)

===========================

**Appellee Brief B.iii. p.29-32**

**Appellee asserts that Carol Sullivan was qualified for the position**

Appellant has demonstrated Dr.Sullivan was not qualified.

Dr.Sullivan did not meet Appellant's requirement of five years of employment in 'rank' of Associate Professor or higher to qualify for full professor. (Detailed argument set out in Appellant's First Amended Brief at pages 80-83).

Appellant has also demonstrated Appellee had determined that Dr.Sullivan was not qualified for the Chair position.

Appellant incorporates his argument above regarding Search Committee and Dr.Aukerman determining that Sullivan was not qualified for the Chair position.

============================

**Appellee Brief B.iii. p.iv.  p.33**

**TAMU-K did conduct  an internal investigation into Dean Dock which included Dock's  hiring of Dr.Sullivan.**

On August 15, 2015, Assoc.Dean Aukerman reported findings of an investigation to Assistant Dean Martin Brittain in a report titled "*"Inappropriate, unethical, and/or illegal actions by Dean Tom Dock".* (CR 1:871-874).

Dr.Aukerman's investigation also determined Dean Dock's hiring of Dr.Sullivan was inappropriate, unethical, and/or illegal. Dr.Aukerman determined that:  (CR1:  872, Sec. 10)

43

Sec (10) *The faculty who were involved in the interview of Carol Sullivan for the Accounting and Finance Department Chair position indicated that she was unacceptable by a margin of 8 to 1. "Tom Dock had decided previously that he wanted to hire her. She was not recommended for an interview by the search committee."* (CR1: 872, Sec. 10)

## PRAYER

For all the above reasons, Appellant Neal Vanzante requests this Court to vacate and/or reverse the Trial Court's Order Granting Defendant Motion for Summary Judgment, and remand / order Plaintiff's lawsuit back to the trial court to be placed on its trial docket. Appellant also requests any and all relief to which he is entitled at law or in equity, and requests general relief.

Respectfully submitted,

_/s/ Chris McJunkin_____
Chris McJunkin
State Bar No. 13686525
2842 Lawnview
Corpus Christi, Tx. 78404
Tel: (361) 882-5747
Fax: (361) 882-8926
cmcjunkin@stx.rr.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of December 2015, a copy of the foregoing was delivered in accordance with the Texas Rules of Civil Procedure on the following person:

Anne Mackin, Assistant Attorney General
Office of Attorney General - Litigation Division
P.O.Box 12548, Capitol Station
Austin, Tx. 78711-2548
Fax: (512) 320-0667
Anne.Mackin@texasattoneygeneral.gov

        /s/ Chris McJunkin

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP 9.4(i)(2)(C), I hereby certify that Statement of Facts, summary of argument, argument, conclusion and prayer contain 7,369  words as determined by WORD 2007; and that it has been prepared in conventional typeface no smaller than 14 point for text.

 /s/ Chris McJunkin